# HANNAN v. DISTRICT OF COLUMBIA.

CRIMINAL LAW; SALE OF LIQUOR ON SUNDAY.

The proprietor of a barroom is not guilty of violating section 6 of the act of Congress of March 3, 1893, providing that on Sunday every barroom in this District shall be kept closed and no intoxicating liquors sold, by opening his barroom merely for the purpose of entering his house, there being no other means of ingress or egress.

No. 756. Submitted January 4, 1898. Decided February 9, 1898.

IN error to the Police Court of the District of Columbia. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Edwin Forrest* and *Mr. John E. McNally* for the plaintiff in error.

*Mr. S. T. Thomas*, Attorney for the District of Columbia, and *Mr. Andrew B. Duvall*, Assistant Attorney, for the defendant in error.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This is an appeal from the Police Court of this District. The case below was presented upon information, and the plaintiff in error, Michael J. Hannan, was charged, as the keeper of a licensed barroom or place where intoxicating liquors were sold, of failing to keep closed his barroom, or place where liquors were sold, on Sunday, the 24th day of October, 1897. The plaintiff in error pleaded not guilty and the case was tried by a jury.

By the sixth section of the act of Congress of March 3, 1893, the act regulating the sale of intoxicating liquors in this District, among other things it is provided, that " between twelve o'clock midnight and four o'clock in the morning, . . . and on Sundays, every barroom, and other places where intoxicating liquors are sold, *shall be kept closed and no intoxicating liquors sold.*"

The accusation against the plaintiff in error was attempted to be supported by the testimony of two policemen, who gave evidence of what they saw and did on the premises of the plaintiff in error, on the night of Sunday, the 24th of October, 1897,—the time charged in the information. A fair summary of the facts of the case, or at least as proved by the two witnesses examined for the prosecution, is furnished in the brief of counsel for the District. It appears that about 11 o'clock on the night of Sunday, October 24, 1897, two men were seen by a policeman to enter the barroom of the plaintiff in error, through the front door of the

house. The policeman went to the back part of the premises, and from thence entered the house, and with the permission of the plaintiff in error, he searched the house, but found no one but the plaintiff in error and his bartender therein; that the rear door leading into the barroom was open, and the plaintiff in error admitted that he and his bartender had just come in; and being asked by the policeman why he came in the front door and through the barroom, he stated that it was the only way he could get in; that there was a light in the barroom, but no one was in there at the time; that there were some beer bottles in the rear of the barroom, and a couple of bottles of beer in the sink, as well as a tray of glasses on the stairs, with the dregs of liquor in them.

This being all the testimony offered on the part of the prosecution, the plaintiff in error proved by Michael Hogan, the bartender, that both he and the bartender lived in the house where the saloon business was carried on; that on Sunday, the 24th of October, 1897, the plaintiff in error and the witness, after breakfast, left the house, the plaintiff in error locking and bolting the rear part of the house and taking the keys with him. Witness accompanied the plaintiff in error, and they remained absent until about 11 o'clock at night, when they returned, and the plaintiff in error opened the front door and they went in, passed through the barroom into the dining room, and closed the door leading into the barroom. Witness went into the rear part of the house to see that everything was all right, and he heard some talking outside, when he opened the door and saw the policemen, who asked him if they might come in, and he replied, yes. They then asked permission to search the house, which they did, going upstairs and all through the house. No one was in the house but the plaintiff in error and the witness; that no one had been in the house on that day; no one could have got into the house, as the plaintiff in error had the keys. That the policemen were let into the house about

five minutes after the accused and the witness came in. One of the officers asked why we came into the front door, and was told that that was the only way in which we could enter; that the rear part of the place was bolted and the doors chained; that the rear part of the building was in a very dilapidated condition, and the yard was open and no enclosure surrounded the place; that there was no other possible way of entering the house; that there was no concealment about the matter; that any one walking along the sidewalk could look into the barroom, the gas being lighted.

The testimony given by this witness *was admitted to be true* by the attorney for the District; and there being no further evidence offered, the plaintiff in error prayed an instruction that he was entitled to be acquitted; but that instruction was refused, and the court instructed the jury, that if they found from the evidence that the plaintiff in error entered his barroom in the manner described in the evidence, it made no difference for what purpose or with what intent—that under the law he was guilty; and the jury found him guilty accordingly, and he was fined fifty dollars, and in default of payment that he should stand committed to the workhouse for a period of sixty days.

In the rulings stated there was manifest error. The act of Congress must receive a rational construction. It is hardly conceivable that it could have been the intention of Congress, by requiring all barrooms and places where intoxicating liquors are sold, to be kept closed on Sundays, to deprive a party and his family of the ordinary privileges of their home, because a bar where liquors are sold happens to be located in a part of the house that may be approached through a front door, used by those residing in the house for purposes of ingress and egress, wholly apart from any connection with the bar. The bar must be kept closed, and the barroom—that is, the room devoted to the uses of the bar—must be kept closed against all who would resort to such place to obtain liquor on Sunday ; and this require-

ment must be strictly observed and enforced. But we fail to see anything in this case that would justify a conviction for having violated either the letter or the reason of the statute, in failing to keep the barroom closed on the Sunday referred to in the evidence. The fact that there was no other way by which the inmates, the parties living and residing in the house, could get in or out, except through the front door of the room in which the bar was located, requires such reasonable construction as will enable the parties to exercise the ordinary privileges of householders—that is, the right of ingress and egress; and the mere opening the door to allow the exercise of such privilege does not constitute, within the meaning of the statute, a failure to keep the barroom closed. If, indeed, it had been shown that the door was opened, or any other way provided, by which even a single individual could have procured liquor from the bar on Sunday, the statute would have been violated, and the proprietor of the bar would be liable to punishment. But no such case has been shown.

We shall reverse the judgment and remand the case, that a judgment of acquittal be entered, or that the information be quashed; and it is so ordered.

*Judgment reversed and cause remanded.*